# IN THE COURT OF APPEALS OF IOWA

———————————

No. 25-1871
Filed July 22, 2026

———————————

**Travis Dominic Karian,**
Petitioner–Appellee,

v.

**Ash Leigh Jean Louise McQuoid,**
Respondent–Appellant.

———————————

Appeal from the Iowa District Court for Henry County,
The Honorable Joshua P. Schier, Judge.

———————————

**AFFIRMED**

———————————

Sydnee M. Waggoner and Katelyn J. Kurt of Whitfield & Eddy, P.L.C., Des
Moines, attorneys for appellant.

Sasha L. Finke of Finke Law Firm PLC, Ainsworth, attorney for appellee.

———————————

Considered without oral argument
by Greer, P.J., Buller, J., and Doyle, S.J.
Opinion by Doyle, S.J.

**DOYLE, Senior Judge.**

Ash Leigh McQuoid appeals the denial of her motion to modify the physical care provisions of the custody decree concerning the children she shares with Travis Karian. She challenges the finding that she did not meet her burden of showing she can provide superior care to the children and the denial of her motion to reopen the record. Both parties request an award of appellate attorney fees.

## BACKGROUND FACTS AND PROCEEDINGS

Ash Leigh is thirty-eight years old and lives in Keosaqua with her fiancé, Spencer, and a daughter from an earlier relationship. Spencer has two children from an earlier relationship who live with them for half of the time. At the time of the 2025 trial, Ash Leigh had just accepted a food service worker job. She was to earn $19 per hour with hours from 8:00 a.m. to 4:00 p.m., five days per week.

Travis is forty-two years old and rents property from his parents in Wayland, where he has lived for fifteen years. A daughter from an earlier relationship lives with Travis half of the time. Travis owns and runs a restaurant in Ainsworth where he works between ten and twenty hours per week. Travis testified that he pays himself $500 per week. He also owns an interest in a car wash with his parents, although he claims he makes no money from the business.

Ash Leigh and Travis never married. They share two children: G.A.K., born in 2017, and G.X.K., born in 2019. They were in a relationship when Travis originally petitioned for custody and visitation of the children in May 2020. That action resolved quickly, with the parties entering a stipulation agreeing to joint legal custody and joint physical care of the

children.   The district court approved and adopted the agreement, incorporating it into the decree.

Ash Leigh and Travis's relationship ended in late 2020 or early 2021 apart from a brief reconciliation in late 2022. The end of their relationship gave rise to conflict, and their ability to communicate about the children deteriorated. This has resulted in near-constant litigation since January 2022, when Ash Leigh first petitioned to modify the custody decree.[1] That litigation ended in October 2022 when the court modified the decree to adopt the parties' stipulation that Travis should have physical care of the children subject to visitation with Ash Leigh two or three nights per week and an agreement about where the children would attend school.

This appeal stems from a second petition to modify the custody decree. Travis petitioned for modification in October 2023 seeking sole legal custody of the children based on the parties' communication failures. Ash Leigh counterclaimed for physical care of the children. Because the parties' communication had improved by the time of trial, Travis dropped his request for sole custody. The main issue before the court was whether Travis should continue as the children's primary caretaker or whether to transfer physical care to Ash Leigh.[2]

---

[1] In addition to two modification actions, the litigation includes disputes over the children's school attendance and passports, a motion for an order directing the parties to communicate via a parenting application, and five contempt actions.

[2] Travis also asked the court to rule on other concerns like the parties' email communications, the exchange of school information, phone calls, discipline, the visitation schedule, visitation exchanges, medical expenses, and child support. None are at issue on appeal.

In September 2025, Ash Leigh moved to reopen the record to add evidence about an incident that occurred after trial. The district court denied the motion the same day it filed a thirty-five-page, well-reasoned ruling on the modification action. The court found a substantial change in circumstances had occurred since entry of the first modified decree. But because the court found that Ash Leigh did not show she could offer superior care, the court declined to transfer physical care to Ash Leigh.

## SCOPE AND STANDARD OF REVIEW

We review the modification order de novo, examining the entire record and deciding issues anew. *See Thorpe v. Hostetler*, 949 N.W.2d 1, 4–5 (Iowa Ct. App. 2020). We give weight to the district court's findings, though they do not bind us. *See id.*

Because rulings on motions to reopen evidence are discretionary, we review them for abuse of discretion. *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020). The court abuses its discretion by exercising it on grounds or for reasons that are untenable or to an extent clearly unreasonable. *See State v. Teeters*, 487 N.W.2d 346, 349 (Iowa 1992).

## DISCUSSION

### I. Physical care.

Ash Leigh first challenges the denial of her request to modify the custody decree to place the children in her physical care. To modify the physical care provisions of a custody decree, a parent seeking modification must show that there has been a substantial change in circumstances since the time of the decree's entry. *In re Marriage of Brown*, 778 N.W.2d 47, 51 (Iowa Ct. App. 2009). The change must be "more or less permanent" and related to the children's welfare. *Id.* (citation omitted). Parents seeking

physical care must meet the "heavy burden" of showing "the ability to offer superior care." *Id.* (citation omitted).

The district court agreed that the parties proved there has been a substantial change in circumstances justifying modification of the decree. The question before us on appeal is whether Ash Leigh met her burden of showing she can offer superior care.

Ash Leigh's main argument concerns Travis's ability to co-parent and support her relationship with the children. The district court criticized Travis's ability to communicate with Ash Leigh, finding he needed to improve his communication "drastically." It found, "The tone of his texts and emails is unnecessary and inappropriate. He often attempts to talk down to Ash Leigh, and inevitably his messages lead to unnecessary complications between the two parents." We heartily agree that Travis's past communication with Ash Leigh has been inappropriate and must improve. But as the court noted, having a "haughty and condescending tone" alone does not make Travis a bad parent. The question is whether it affects the children negatively. *See, e.g.*, *In re Marriage of Stice*, No. 18-0783, 2019 WL 719171, at *4 (Iowa Ct. App. Feb. 20, 2019) (affirming the modification of physical care where a mother's inappropriate discussion with the child about the father kept the child in the middle of their conflict, which "had a detrimental impact on [the child]'s relationship with her father"). There is no evidence showing that Travis talks about Ash Leigh to the children or that he talks about her to others in the presence of the children. And while communication issues prompted Travis to petition for modification, both parties admitted that communication improved by the time of trial, resulting in Travis retracting his request for sole legal custody.

Ash Leigh also claims that Travis has failed to adequately supervise the children, which is a detriment to their safety and security. She cites an incident in which one child broke his arm when in Travis's care. Although Travis admitted that he did not have eyes on the child when the injury occurred, the court disagreed that this was proof that Travis did not properly supervise the children:

> It is not unusual for children to not constantly be in the direct sight of adults, even if the adults are physically present. This does not mean the child was unsupervised. Nor does the fact that an injury occurred mean that a child was unsupervised. Many children suffer injuries even while they are under the attentive gaze of a parent. Active children often result in injuries, and one broken bone for a child 8 years of age does not indicate a failure to properly supervise.

Again, we concur.

Following our de novo review of the record, we conclude that Ash Leigh has not met the heavy burden of showing she can offer superior care. As the district court found, the children have "thrived" in Travis's care during the past few years:

> There is no evidence of issues with emotional health, physical health, or educational needs. Ash Leigh cannot testify to how well the children are doing when describing them individually and in school, but then turn around and claim they are failing to thrive overall. Such an argument does not make sense and is not supported by the evidence in this case. The Court cannot find that it is in the children's best interest to upend lives, change school districts, and remove them from the home they have lived in their entire lives based on the evidence presented.

Our focus in deciding physical care is "what is best for the *child*." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Because Ash Leigh did not show she has a superior ability to bring the children to physical and

mental health and social maturity, we affirm the denial of her petition to modify physical care. *See id.*

## II. Reopening the record.

We next consider Ash Leigh's claim that the district court abused its discretion by denying her motion to reopen the record. In doing so, we recognize that the trial court has broad discretion to reopen the record and receive more evidence if it is "necessary to the due administration of justice." *Bangs v. Maple Hills, Ltd.*, 585 N.W.2d 262, 267 (Iowa 1998) (citation omitted). Because the district court is in the best position to decide what is "necessary and appropriate to achieve substantial justice," we will not ordinarily interfere with that decision. *Id.* (citation omitted). The supreme court has found the court should consider the following factors in ruling on a request to reopen the record:

> (1) the reason for the failure to introduce the evidence, (2) the surprise or unfair prejudice that might result by introducing the evidence, (3) the diligence used by the proponent to secure the evidence, (4) the admissibility and materiality of the evidence, (5) the stage of the trial when the motion is made, (6) the time and effort expended in the trial, and (7) the inconvenience that reopening the evidence would cause to the proceedings.

*State v. Jefferson*, 545 N.W.2d 248, 250 (Iowa 1996) (emphasis omitted).

Ash Leigh moved the court to reopen the record three months after trial so she could introduce evidence about an incident in which one child chipped two teeth. The children were in Travis's care, and Travis was in his house working at the time the incident occurred. Ash Leigh alleged that Travis did not inform her of the incident until she noticed the injury during a custody exchange. She also alleged that he communicated in an inappropriate manner while discussing the matter.

7

The district court denied Ash Leigh's motion, finding it was "inappropriate" to reopen the record based on the incident Ash Leigh cited. Noting the "constant bickering and litigation" the parties have engaged in, the court found that the record "would simply never close" if it reopened for every new disagreement or an incident involving the children. The court decided that the parties presented enough evidence at trial to decide the claims before it.

Although the new evidence Ash Leigh wanted to introduce was from an incident that occurred after trial, we disagree with her assertion that it was highly relevant. The court addressed Ash Leigh's concern about the injuries the children sustained while in Travis's care based on similar incidents and found it was not proof that he did not supervise the children or was a detriment to their safety and security. Weighing the materiality of the new evidence and the similar evidence already in the record, the ongoing nature of the parties' litigation, the timing of the motion so near to the court's ruling on the action, and the delay reopening the evidence would cause, we find no abuse of discretion.

## III. Appellate attorney fees.

Both parties request an award of appellate attorney fees. Iowa Code section 600B.26 (2023) authorizes an award of reasonable attorney fees to the prevailing party in a custody action. This includes appellate attorney fees. *See Schaffer v. Frank Moyer Constr., Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding statute allowing award of trial attorney fees also allows an award of appellate attorney fees). Because Ash Leigh did not prevail on appeal, we cannot award her appellate attorney fees.

The decision to award appellate attorney fees lies within our discretion. *See In re Fiscus*, 819 N.W.2d 420, 425 (Iowa Ct. App. 2012).

Turning to Travis's request for appellate attorney fees, we consider his financial need, Ash Leigh's ability to pay, and whether he was bound to defend the trial court's decision on appeal. *See id.* Although Travis had to defend the district court's decision on appeal and prevailed, we decline to award him appellate attorney fees after weighing his need and Ash Leigh's ability to pay.

**AFFIRMED.**